Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6131 | DATE | 9/27/2001 |
| CASE TITLE | UNICARE HEALTHPLANS OF THE MIDWEST, vs. GAYLE STEINBERG, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Dana Steinberg's motion for leave to cite additional authorities is denied. Discovery to close 11/26/01. Parties to file joint pretrial order by 12/18/01. Pretrial conference set for 1/17/02 at 11:30 a.m. Bench trial set for 2/19/02 at 10:30 a.m. Enter Memorandum Opinion And Order. Defendants' motion for summary judgment [21-1] and plaintiff's cross-motion for summary judgment [30-1] are denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| LG | courtroom deputy's initials | SEP 27 PM 5:42 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNICARE HEALTHPLANS OF THE MIDWEST, INC., f/k/a RUSH PRUDENTIAL HMO, INC., | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) No. 00 C 6131 ) |
| GAYLE STEINBERG, as mother of DANA STEINBERG, a minor, GAYLE STEINBERG, DANA STEINBERG, | ) Judge John W. Darrah ) ) ) |
| Defendants. | ) ) |

**DOCKETED**
SEP 2 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Unicare Healthplans of the Midwest, Inc. (Unicare), formally known as Rush Prudential HMO (Rush Prudential), commenced an action against defendants, seeking reimbursement of monies paid for medical treatment received by Dana Steinberg (Dana) pursuant to an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1001 *et. seq.* Before this Court are the parties' cross-motions for summary judgment.

The parties do not dispute that the Rush Prudential health care plan in the instant case was an employee benefit plan pursuant to ERISA, 29 U.S.C. § 1002(1).

Defendants argue that Unicare was not a fiduciary under ERISA because Rush Prudential was not a party to the Group Administration Agreement (Administration Agreement) because Rush Prudential is not named in the Administration Agreement. In the alternative, defendants argue that if Unicare is a fiduciary under ERISA, recovery is not available to Unicare pursuant to the Illinois

Family Expense Act. Plaintiff argues that it was a fiduciary under ERISA and is entitled to reimbursement of money paid for Dana's medical expenses.

## FACTS

Gayle Steinberg (Gayle) is the mother of Dana. In January 1995, Dana was injured and sustained severe injuries while in the care of a babysitter. As a beneficiary under Gayle's insurance through her employer, Rush North Shore Hospital, Dana received benefits for medical expenses incurred in treating the injuries she sustained in January 1995. (Second Amended Complaint ¶¶ 3, 16-17). Subsequently, Dana settled a cause of action against the party that caused her injuries for one million dollars. (Plaint.'s 56.1(a)(3) Statement ¶ 12).

Rush North Shore Hospital had an agreement with Rush Prudential to provide health care coverage to employees of Rush North Shore Hospital and their covered dependents. (Plaint.'s 56.1(a)(3) Statement ¶ 2). However, the Administration Agreement in effect in 1995 states that "RUSH-PRESBYTERIAN-ST. LUKE's Health Plans, Inc. ("RHP"), and Access Health, Inc. ("Access"), hereby offer coverage for certain health maintenance organization services to RUSH NORTH SHORE HOSPITAL...." The Administration Agreement was signed by Catherine A. McNeal (McNeal), as the Senior Vice President of Finance, in two places identified as Rush-Presbyterian-St. Luke's Health Plans, Inc. and Access Health, Inc. (Group Administration Agreement; Def.'s Exh. G).

In an affidavit, McNeal avers that she is familiar with the Administration Agreement and that the form was initially used by Rush-Presbyterian-St. Luke's Health Plans and Access Health prior to the formation of Rush Prudential. She avers that the intended parties to the Administration Agreement were Rush North Shore Hospital and Rush Prudential. This particular form was prepared

2

before the formation of Rush Prudential; and the reason the Administration Agreement does not refer to Rush Prudential, despite the fact that it was the entity with whom Rush North Shore Hospital contracted with, was because this document was being used during the transition period after Rush Prudential was formed. She further avers that the Member Guide and Certificate for Rush Prudential was the "operative document" which applied to Rush Prudential's relationship and agreement with Rush North Shore Hospital and its employees and dependents. (McNeal Affidavit).

James T. Frankenbach (Frankenbach), the President of Rush North Shore Hospital in 1995, avers in his affidavit that the Member Guide and Certificate of Rush Prudential was the "operative document" which applied to the health insurance coverage relationship between Rush Prudential and Rush North Shore Hospital's employees and their covered dependents. He avers that from at least January 1995, he and others affiliated with Rush North Shore Hospital contemplated, believed, and operated under the knowledge that Rush Prudential was the provider of health coverage and was a fiduciary for all purposes set forth in the agreements between Rush Prudential and Rush North Shore Hospital. He also avers that the intended parties to the Administration Agreement were Rush North Shore Hospital and Rush Prudential. In order for a person or dependent to obtain health coverage under the contract between Rush Prudential and Rush North Shore Hospital, the individual had to be an employee, or dependent of an employee, of Rush North Shore Hospital. Rush North Shore Hospital paid to Rush Prudential at least a portion of the insurance premiums on behalf of its employees. (Frankenbach Affidavit).

Both McNeal and Frankenbach aver that Rush Prudential, not Rush-Presbyterian Health Plans and/or Access Health, administered the health plan referred to in the Administration Agreement. (McNeal and Frankenbach Affidavits).

3

The Member Guide and Certificate provides, in pertinent part:

> **Right of Recovery from Third Party** ... Each Member agrees that Rush Prudential retains the right to be subrogated to all rights of a Member to recover from a third party and to be reimbursed by the Member in the event the Member recovers from a third party. Therefore, the Member agrees that he or she or anyone acting on behalf of the Member will: ... (d) reimburse Rush Prudential any funds received from other parties by or on behalf of the Member whether by settlement, judgment or otherwise. (Plaint.'s 56.1(a) Statement ¶ 11).

A Member is defined as "either a Subscriber or a Family Dependent." (Member Guide and Certificate for Rush Prudential).

The parties of this suit include those parties involved in the adjudication of Unicare's lien in a state court proceeding before Honorable Judge John A. Ward in the Circuit Court of Cook County, Illinois. On March 23, 2001, Judge Ward held, in pertinent part, that "the Family Expense Act does not 'relate' to health plans organized under ERISA in the type of way required to trigger preemption. Consequently, this court adjudicates the medical liens asserted by the Plans to zero since the underlying charges may not be asserted against plaintiff [Dana], but only her mother, under the Family Expense Act." (Def.'s Exh. N).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence

establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

Federal common law rules of contract interpretation are applied when considering a contract in the context of an ERISA claim.[1] *Central States, Southeast & Southwest Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000); *Hammond v. Fidelity & Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir. 1992).

Normally, a court will only look to the contract language to determine if an agreement is ambiguous. However, under limited circumstances, a court may look to objective extrinsic evidence to demonstrate that an otherwise unambiguous contract contains an ambiguous provision. *Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998) (*Mathews*). This is called the doctrine of extrinsic ambiguity and allows the admission of evidence to demonstrate that what appears as clear contract language actually means something other than what it seems to mean. *Bock v. Computer Assoc. Inter'l*, 257 F.3d 700, 707 (7th Cir. 2001) (*Bock*). In other words, the evidence is allowed "to demonstrate that although the contract looks clear, anyone who understood the context of its creation would understand that it doesn't mean what it seems to mean." *Mathews*, 144 F.3d at 466. In order for the extrinsic evidence doctrine to apply, the extrinsic evidence must be objective – it must not depend on the credibility of an interested party of the litigation. *Mathews*, 144 F.3d at 467.

This doctrine serves 'the overriding purpose in construing a contract to give effect to the mutual intent of the parties at the time the contract was made.' *Bock*, 257 F.3d at 708, quoting

---

[1] Plaintiff and defendants cite Illinois case law in support of their contract interpretation arguments. Illinois contract law would apply if jurisdiction was based on diversity (*Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1036 (7th Cir. 1998); however, federal common law rules of contract apply when jurisdiction is based on the presence of a federal statute (*See Central States, Southeast & Southwest Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000)).

5

*Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1013 (7th Cir. 1984). Therefore, strong, objective extrinsic evidence indicating an intent contrary to that in the agreement can create an ambiguity. *Bock*, 257 F.3d at 708.

In the instant case, the extrinsic evidence meets the objective test. Frankenbach is not an interested party in the present litigation. At the time the Administration Agreement was entered into, Frankenbach was the President of Rush North Shore Hospital, which is not a party to the present litigation and does not have an interest in the present litigation because the outcome of this case will not impact Rush North Shore Hospital. In addition, as the President of a party to the Administration Agreement, Frankenbach would have knowledge of the intent of the parties of that agreement. Furthermore, at the time he completed his affidavit, Frankenbach was the Senior Vice-President of Rush-Presbyterian-St. Luke's Medical Center, an entity with no interest in the present litigation.

McNeal also avers that Rush Prudential was a party to the Administration Agreement. At the time the Administration Agreement was entered into, McNeal was the Associate Vice-President of Rush Prudential; and her signatures appear on the Administration Agreement. Obviously, Rush Prudential has an interest in the present litigation. However, at the time that McNeal completed her affidavit, she was no longer employed by Rush Prudential; and defendants provide nothing to indicate that the contents of McNeal's affidavit should be doubted.

Based on the above objective evidence, the Administration Agreement is extrinsically ambiguous. Having found an ambiguity in the contract, summary judgment for either party is only appropriate if the court were to conclude that there is no genuine issue with respect to any fact that is material to the resolution of the ambiguity. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *CSFM Corp. v. Elbert & McKee Co.*, 870 F.Supp. 841, 850 (N.D.Ill. 1994).

The above affidavits support plaintiff's proposition that Rush Prudential was a party to the Administration Agreement. However, defendants deny receiving any benefits from Rush Prudential, and plaintiff has failed to provide undisputed evidence that it paid any benefits on behalf of either defendant. Likewise, Gayle admits that medical expenses were paid by her "HMO Plan" but does not indicate the identity of her "HMO Plan". Therefore, genuine issues remain with respect to the resolution of the ambiguity of the Administration Agreement, and summary judgment for either party is not appropriate.

In the alternative, defendants argue that summary judgment in their favor is appropriate because plaintiff is collaterally estopped from pursuing this action against Dana by the Order of State Circuit Judge John W. Ward. Defendants allege that Judge Ward's holding that the Illinois Family Expense Act does not "relate" to ERISA so as to be preempted by it requires this Court find that, by operation of Illinois statute, Dana is not a beneficiary of Gayle's health insurance contract since the cost of Dana's medical expenses is Gayle's responsibility.

Since an Illinois court issued the prior judgment, this Court must look to Illinois law to determine whether collateral estoppel bars Rush Prudential's claims. *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955 (7th Cir. 1997); 28 U.S.C. § 1738. In Illinois, collateral estoppel applies where:(1) the issue decided in the first case is identical to the one presented in the second case; (2) there has been a final judgment on the merits in the first case; and (3) the party against whom the estoppel is asserted was a party to, or in privity with a party to, the first case. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 152 (1994). For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review be exhausted. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986) (*Ballweg*).

In the instant case, Judge Ward's Order is presently on appeal. Therefore, the doctrine of collateral estoppel cannot be applied. *See Ballweg*, 114 Ill. 2d at 113. Accordingly, defendants' Motion for Summary Judgment based on collateral estoppel is denied.

## CONCLUSION

For the reasons set forth above, defendants' Motion for Summary Judgment and plaintiff's Cross-Motion for Summary Judgment are denied.

Dated: September 27, 2001

JOHN W. DARRAH
United States District Judge